IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JENNIFER R. CHAVEZ,

        Plaintiff,

v.                                                                               No. 1:13-CV-295 CG

CAROLYN W. COLVYN, Acting
Commissioner of the Social Security
Administration,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Jennifer Chavez's *Motion to Reverse or Remand Administrative Agency Decision* and *Memorandum in Support of Motion to Reverse or Remand Administrative Agency Decision* (together the "Motion"), filed on November 12, 2013, (Doc. 18; Doc. 19); *Defendant's Response to Plaintiff's Motion to Reverse and/or Remand the Administrative Agency Decision* ("Response"), filed on January 13, 2014, (Doc. 20); and Plaintiff's *Reply Memorandum in Support of Motion to Reverse or Remand Administrative Agency Decision* ("Reply"), filed on January 27, 2014, (Doc. 21).

        On February 27, 2009, Ms. Chavez filed an application for disability insurance and supplemental security income benefits, alleging disability beginning January 23, 2009. (Administrative Record ("AR") at 124–27, 128–34). Her application was denied on June 9, 2009, (AR 58–61), and also upon reconsideration on May 4, 2010, (AR 71–73, 74–77). Ms. Chavez filed her request for a hearing on July 13, 2010, (AR 78–79); the hearing occurred on October 12, 2011 before Administrative Law Judge ("ALJ") Ann Farris. (AR 29–52). Ms. Chavez and Thomas A. Greiner, an impartial vocational expert,

testified at the hearing. (AR 29–52).  Ms. Chavez subsequently filed a letter with the ALJ to explain that she had returned to work, and was requesting a "closed period" of disability from January 23, 2009 through May 31, 2011. (AR 216–17).

The ALJ issued her opinion on November 15, 2011, finding that Ms. Chavez was not disabled during the closed period. (AR 13–23). Ms. Chavez filed an application for review by the Appeals Council, which was summarily denied, (AR 1–7), making the decision of ALJ Farris the final decision of the Commissioner of the Social Security Administration (the "Commissioner") for purposes of this appeal.

Ms. Chavez complains that ALJ Farris committed reversible, legal error by failing to apply the correct legal standards when she: (i) evaluated the medical opinion of Ms. Chavez's treating physicians, and (ii) analyzed Ms. Chavez's ability to do her past relevant work. (Doc. 19 at 1).

The Court has reviewed the Motion, the Response, the Reply, and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. Because the Administrative Law Judge committed legal error when she discounted the medical opinion of one of Ms. Chavez's treating physician, pursuant to 42 U.S.C. § 405(g) (sentence four), the Court orders that the Motion be **GRANTED** and the case be **REMANDED** for further proceedings.

### I. Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)).

If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981; *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits (DIB) and supplemental security income (SSI), a person establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this definition for disability, a five-step sequential evaluation process has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the SEP, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity"; that (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) his impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.

The fourth step of the sequential analysis is comprised of three phases. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). At phase one the ALJ must evaluate a claimant's physical and mental RFC. *See* Social Security Rulings ("SSR") 86-8, 1986 SSR LEXIS 15, at *18. At phase two, the ALJ must determine the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). At phase three, the ALJ will decide whether the claimant has the ability to meet the job demands found in phase two, in light of "the mental and/or physical

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

4

limitations found in phase one." *Winfrey*, 92 F.3d at 1023 (citing *Henrie v. U. S. Dep't of Health & Human Servs.*, 13 F.3d 359, 361 (10th Cir. 1993) and SSR 82-62, 1982 SSR LEXIS 27). If the ALJ determines the claimant cannot engage in past relevant work, she will proceed to step five of the evaluation process.

At step five the burden of proof shifts to the Commissioner to show the claimant is able to perform other work in the national economy, considering his residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1257.

### III. Background

Ms. Chavez initially applied for disability benefits alleging debilitating carpal tunnel syndrome in her right hand, degenerative disc disease, spinal stenosis, cervical disc disease, herniated discs, depression, high blood pressure, and arthritis. (AR 155). She subsequently alleged additional impairments, including headaches, a "mild case" of fibromyalgia, and worsening problems with her low back, hips, and right shoulder. (AR 195, 200). The administrative record includes Ms. Chavez's medical records, earnings records, work history report, disability application, hearing testimony, examining consultative reports, and non-examining state agency evaluations.

At step one, ALJ Farris determined that Ms. Chavez met the insured status requirement through March 31, 2013, but that she had engaged in substantial gainful activity since May 31, 2011 through the date of the decision because she had returned to work. (AR 15). Pursuant to Ms. Chavez's request, ALJ Farris addressed Ms. Chavez's disability claim only for the closed period between January 23, 2009 and May 31, 2011. (AR 15) (citing AR 216–17).

At step two, the ALJ found that Ms. Chavez was severely impaired with status

post-cervical fusion, right shoulder impingement, low-back pain with minimal degenerative disc disease, and an adjustment disorder. (AR 16). At step three, the ALJ determined that none of Ms. Chavez's impairments, solely or in combination, equaled one of the listed impairments in 20 CFR §§ 404.1520(d), 404.1525, 404.1526. (AR 16–17).

The ALJ proceeded to step four and made RFC findings that Ms. Chavez could perform a restricted range of sedentary work. (AR 17–22). She then adopted the testimony of the vocational expert, who testified that a hypothetical individual with Ms. Chavez's age, education, RFC, and vocational profile would be capable of performing her past relevant work. (AR 22). Thus, ALJ Farris concluded that Ms. Chavez was not disabled during the closed period. (AR 22).

### A. *Objective Medical Evidence Considered by the ALJ*

First, the ALJ recited the material medical evidence and medical source opinions in the record. Ms. Chavez was treated at ABQ Health Partners, Inc. beginning in 2006 for her back, right shoulder, wrist, and neck pain. (AR 236–77, 455–500). One of her treating physicians at ABQ Health Partners, Inc. was Michael F. Malizzo, M.D. He performed trigger point injections, an epidural, and other pain injections on Ms. Chavez. The ALJ noted that Dr. Malizzo's treatment records establish the diagnoses of lumbar spondylosis without myelopathy, degenerative changes of lumbar disc, and myofascial pain in the cervical, thoracic, and lumbar musculature, with onset as early as 2007. (AR 18). On November 7, 2011, Dr. Malizzo completed a medical assessment of Ms. Chavez's ability to do work-related activities for a time period that encompassed the closed period. (AR 549).

Ms. Chavez underwent an anterior cervical discectomy and fusion on January 29, 2009. (AR 287–89). The ALJ discussed Ms. Chavez's follow-up treatment and progress. Margaret Spencer, M.D. subsequently performed a consultative physical examination of Ms. Chavez on May 16, 2009. (AR 428–30). Dr. Spencer diagnosed Ms. Chavez with arthritis, status post-cervical spine surgery, and stable hypertension, and opined that Ms. Chavez's spinal discomfort appeared to limit her functioning to a mild degree. (AR 428–30).

Treating physician Frank O'Sullivan, M.D. completed a medical assessment of Ms. Chavez on September 3, 2009. (454). He opined that Ms. Chavez could only occasionally lift and carry less than ten pounds and frequently lift and carry less than five pounds. (AR 454). He wrote that she could stand and walk less than two hours in an eight-hour workday, and that she must periodically alternate between sitting and standing to relieve pain or discomfort.

ALJ Farris also weighed the medical source opinions in the record. She accorded Dr. O'Sullivan's opinions significant weight because the restrictions he imposed were consistent with her own RFC determination. (AR 21). She granted the non-examining, State agency consulting physicians' opinions some weight, for the reason that their opinions support the finding that Ms. Chavez is not disabled. (AR 21). She accorded little weight to the State agency psychological consultants' assessments that Ms. Chavez's mental impairments are not severe because Ms. Chavez was assessed with a GAF score of 55. (AR 21). The ALJ granted Dr. Spencer's opinion as to Ms. Chavez's functional limitations limited weight in light of Ms. Chavez's testimony that the examination was limited in nature. (AR 21). Last, ALJ Farris granted the opinion of Dr.

Malizzo dated November 7, 2011 little weight. (AR 21–22).

### B. *RFC Determination*

The ALJ found that Ms. Chavez had the residual functional capacity to perform a restricted range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), because she would only able to: (i) alternate between sitting and standing every 30 minutes; (ii) occasionally reach overhead; (iii) frequently lift and carry less than five pounds; (iv) occasionally lift and carry less than ten pounds, (v) stand and walk less than two hours in an eight-hour workday; (vi) occasionally kneel, stoop, and crouch; and (vii) never crawl. (AR 17, 21). In making that determination, the ALJ relied on the medical evidence in the record and Ms. Chavez's testimony regarding her alleged symptoms.

ALJ Farris found that Ms. Chavez's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with her RFC determination. (AR 20–21). She also noted that the RFC is supported by Dr. O'Sullivan's opinions, the fact that Ms. Chavez held herself out as able to work in order to receive unemployment benefits, Ms. Chavez's non-compliance with her prescribed mental-health treatment plan, the lack of any ongoing treatment for her physical impairments throughout the closed period, and the routine and conservative nature of the treatment she received during the closed period. (AR 22).

**IV. Analysis**

Ms. Chavez alleges ALJ Farris committed several reversible errors at step four of the sequential analysis. First, Ms. Chavez contends that ALJ Farris violated the treating physician rule because she did not conduct the correct legal analysis of Dr. Malizzo's medical opinion made on November 7, 2011. (Doc. 19 at 12–16). She argues that the

ALJ did not provide sufficiently specific reasons for her decision to discount Dr. Malizzo's opinion, and that the ALJ's reasoning is not supported by substantial evidence in the record. (Doc. 19 at 12–16). Second, she complains that ALJ Farris failed to properly assess the physical and mental demands required by Ms. Chavez's past relevant work. (Doc. 19 at 17–21).

The Commissioner does not dispute Dr. Malizzo's status as Ms. Chavez's treating physician, but maintains the ALJ did not commit legal error because she provided specific, legitimate reasons, that are supported by substantial evidence in the record, for discounting Dr. Malizzo's opinion. (Doc. 20 at 5–10). The Commissioner also responds that substantial evidence supports the ALJ's finding that Ms. Chavez is able to do his past relevant work. (Doc. 20 at 10–12).

### A. *Dr. Malizzo's November 7, 2011 Medical Opinion*

On November 7, 2011, Dr. Malizzo completed a medical assessment of Ms. Chavez's ability to do work-related activities for the time period beginning one year prior to his initial examination of Ms. Chavez through May 31, 2011. (AR 549). Dr. Malizzo opined that, because of Ms. Chavez's musculoskeletal impairments and associated pain, she retained the ability to: (i) occasionally lift or carry less than ten pounds; (ii) frequently lift or carry less than five pounds; (iii) stand or walk at least two hours in an eight-hour workday and sit less than six hours in an eight-hour workday, as long as she could periodically change positions between sitting and standing; (v) push and pull in her upper and lower extremities to a limited degree; and (vi) reach in all directions, including overhead, to a limited degree. (AR 549). Dr. Malizzo found that Ms. Chavez could do no repetitive handling with her right hand. (AR 549).

The November 7, 2011 opinion was submitted as additional evidence for the ALJ's consideration after the hearing. The ALJ stated in her decision that it is "unclear what [Dr. Malizzo's] treatment relationship with [Ms. Chavez] is and the basis for his determination." (AR 21). She commented that Dr. Malizzo made his assessment after Ms. Chavez started working again and "is therefore of little value for the period at issue and at odds with her return to work prior to the date of this statement." (AR 22). She concluded that the opinion would be given "little weight" because it is at odds with the record as a whole. (AR 22).

Ms. Chavez points out that ALJ Farris' RFC assessment conflicts with Dr. Malizzo's opinion regarding Ms. Chavez's abilities to sit and stand because Dr. Malizzo found Ms. Chavez is able to sit less than six hours in an eight-hour workday, while the ALJ found she can sit for at least that duration of time. (Doc. 19 at 13–14). According to Ms. Chavez, Dr. Malizzo's opinion would rule out Ms. Chavez's ability to perform sedentary work during the closed period, because the limitations he placed on Ms. Chavez's ability to sit and stand significantly erode the base for sedentary work. SSR 96-9p, 1996 SSR LEXIS 6, at *17-19. Therefore, if the ALJ failed to properly consider Dr. Malizzo's opinion, then her RFC determination was erroneous.

    B.    *Treating Physician Rule*

Ms. Chavez argues that the ALJ violated the treating physician rule when she considered Dr. Malizzo's November 7, 2011 opinion. (Doc. 19 at 2). The Social Security regulations require the ALJ to evaluate every medical opinion in the record. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). "The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency

physician who has never seen the claimant is entitled to the least weight of all." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (per curiam) (citing 20 C.F.R. §§ 404.1527(d)(1), (2) and 416.927(d)(1), (2); SSR 96-6p, 1996 SSR LEXIS 3, at *5–6).

The ALJ should accord opinions of treating physicians "controlling weight" when those opinions are well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record; this is known as the "treating physician rule." 20 C.F.R. § 404.1527(c)(2); *Langley*, 373 F.3d at 1119. A treating physician's opinion is accorded "controlling weight" because the treating physician has a "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations." *Doyal*, 331 F.3d at 762 (citing 20 C.F.R. § 416.927(d)(2) and 404.927(d)(2)).

If a treating physician's opinion is not supported by medical evidence or consistent with the record, it may still receive deference. SSR 96-2p, 1996 SSR LEXIS 9 at *9. The level of deference the treating physician's opinion receives must be determined using the following six factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300–01 (10th Cir. 2003); *see* 20 C.F.R. §§ 404.1527(c)–(d), 416.927(c)–(d). The ALJ must give good reasons—reasons that are "sufficiently specific to [be] clear to any subsequent reviewers"—for the weight that he

ultimately assigns to the opinions. *Langley*, 373 F.3d at 1119 (citations omitted).

In sum, the ALJ must conduct a sequential, two-step inquiry if she wishes to accord a treating physician's opinion less than "controlling weight." First, the ALJ must find the opinion to be unsupported by medical evidence or inconsistent with substantial evidence in the record. Next, she must determine what deference she will grant the opinion after considering the factors listed above, and state sufficiently specific reasons for that determination. Each step in the inquiry is "analytically distinct." *See Krauser v. Astrue*, 638 F.3d 1324, 1330–31 (10th Cir. 2011). Her determination, like all of her findings, must be supported by substantial evidence.

### C.  *The ALJ Did Not Follow the Treating Physician Rule*

In applying the first step of the treating physician rule, the ALJ stated that Dr. Malizzo's opinion was "at odds with the record as a whole" and that the basis for Dr. Malizzo's findings was "unclear." (AR 21). Ms. Chavez argues that the ALJ's reasoning at step one is not supported by substantial evidence in the record, because the ALJ did not give any reasons to support her finding. The ALJ did not identify which parts of the record are at odds with Dr. Malizzo's medical opinion, or why she found that the basis for Dr. Malizzo's opinion is unclear. Ms. Chavez further contends that medical evidence in the record actually bolsters Dr. Malizzo's opinion. For example, Dr. O'Sullivan also opined that Ms. Chavez must change positions between sitting and standing to a degree that would potentially rule out her ability to sit with normal breaks for any length of time, which significantly erodes the base for sedentary work. (AR 454). Dr. O'Sullivan's opinion, which was afforded significant weight, is therefore in accord with Dr. Malizzo's findings. (Doc. 19 at 16).

The Commissioner responds that Ms. Chavez misconstrues Dr. O'Sullivan's opinion because Dr. O'Sullivan actually found that Ms. Chavez could stand or walk less than two hours in an eight-hour workday for the reason that Ms. Chavez must alternate between sitting and standing. (AR 454). Therefore, the Commissioner reasons, Dr. O'Sullivan's opinion supports the ALJ's finding that Ms. Chavez can do a reduced range of sedentary work with a sit and stand option every thirty minutes. (Doc. 20 at 9). However, the Court is not persuaded by the Commissioner's argument, because the ALJ did not distinguish and explain these ambiguities between the two physicians' opinions, and the disparate weights afforded to each, in her decision.

The Commissioner also contends that Dr. Malizzo's opinion is unreliable because it is not the product of an examination of Ms. Chavez. (Doc. 20 at 7). Therefore, the Commissioner reasons, there is substantial evidence to support the ALJ's conclusion that it is unclear what evidence Dr. Malizzo relied on in making his assessment. (Doc. 20 at 8). The Commissioner further argues that Dr. Malizzo's opinion is inconsistent with other evidence in the record, including Dr. Spencer's opinions.

However, the ALJ did not state that those were the reasons she declined to grant Dr. Malizzo's opinion controlling weight. The Commissioner's arguments cannot save the ALJ's determination because the Court may not stray from the four corners of the decision. The Court must evaluate an ALJ's decision based solely on the reasons stated in the decision, and it is impermissible for the Court to engage in *post hoc* rationalization. *Robinson*, 366 F.3d at 1084–85. Therefore, the Court finds that ALJ Farris failed to provide sufficiently specific reasons why Dr. Malizzo's opinion was not afforded "controlling weight" at step one of her analysis of Dr. Malizzo's RFC assessment.

At step two of her analysis of the opinion, ALJ Farris considered the treatment relationship between Dr. Malizzo and Ms. Chavez. The ALJ concluded that the extent of the relationship was "unclear." (AR 21). Ms. Chavez argues that the ALJ's reasoning is erroneous because the record shows that Dr. Malizzo treated Ms. Chavez from 2007 through June 2010. (AR 236–58, 259–77, 550–62). Further, the ALJ acknowledged in an earlier part of her decision that Dr. Malizzo performed Ms. Chavez's trigger point injections, epidural, and other pain injections, and she also commented that Dr. Malizzo's treatment of Ms. Chavez "establish[es] diagnoses of lumbar spondylosis without myelopathy, degenerative changes of lumbar disc, and myofascial pain in the cervical thoracic, and lumbar musculature." (AR 18).

The Commissioner responds that much of Dr. Malizzo's treatment of Ms. Chavez is irrelevant to the closed period between January 23, 2009 through May 31, 2011, and that Dr. Malizzo's previous treatment notes do not contain all of the restrictive findings found in his November 7, 2011 assessment. (Doc. 29 at 6–8) (citing AR 551–55, 559). However, the Court cannot find language in the decision that ALJ Farris relied on any of that evidence to discount Dr. Malizzo's opinion. Again, the Court must evaluate an ALJ's decision based solely on the reasons stated in the decision, and it is impermissible to engage in *post hoc* rationalization. *Robinson*, 366 F.3d at 1084–85. Therefore, the Court finds that the ALJ failed to state with sufficient specificity her reasons for discounting Dr. Malizzo's opinion in consideration of the treatment relationship.

At step two of the treating physician rule the ALJ also considered the timing of Dr. Malizzo's evaluation. She concluded that, because Dr. Malizzo made his RFC assessment after Ms. Chavez had returned to work, the assessment was of little value

14

for evaluating disability for the alleged closed period of disability. (AR 21–22). However, Ms. Chavez points out that Dr. Malizzo was instructed to only consider her functional limitations during the closed period and the period immediately preceding the closed period, which undermines the ALJ's reasoning. (Doc. 19 at 15–16). Indeed, the forms used by Dr. Malizzo directed him to consider Plaintiff's "medical history and the chronicity of findings . . . from one year prior to initial examination to 5/31/11." (AR 549) The Commissioner responds that because the ALJ also found that Dr. Malizzo's assessment is at odds with the medical evidence as a whole, she permissibly discounted the opinion on the basis that Dr. Malizzo evaluated Ms. Chavez abilities for an earlier period of time. (Doc. 20 at 9).

However, the Court has already explained that all of the other factors that the ALJ considered in weighing Dr. Malizzo's RFC assessment are not supported by sufficiently specific reasoning or substantial evidence. It would be impermissible for the Court to uphold ALJ Farris' analysis based solely on consideration of timing. *See Rogoff v. Astrue*, No. 1:10-cv-1041 LAM, *14 (D.N.M. Nov. 28, 2011) (unpublished) (citing *Andersen v. Astrue*, No. 05-4305, 319 Fed. Appx. 712, 722 (10th Cir. Apr. 3, 2009) (unpublished)). The Commissioner even concedes that an "ALJ should not reject a treating physician's opinion based only on timing." (Doc. 20 at 9). Therefore, the Court cannot hold that the ALJ followed the treating physician rule based solely on the consideration of the timing of Dr. Malizzo's opinion.

The ALJ did not give sufficiently specific reasons for discounting Dr. Malizzo's opinion when she applied both steps of the treating physician rule. Thus, ALJ Farris failed to evaluate his medical source opinion under the proper legal standards. The Court

finds that the ALJ did not adequately consider Dr. Malizzo's opinion, and erred by discounting that opinion when she made her RFC assessment. Because of the ALJ's failure to follow the correct legal standards in considering the opinion of Ms. Chavez's treating physician, the Court remands this case for further proceedings.

## V. Conclusion

For the reasons discussed above, the Court finds that, considering all of the evidence in the record, the ALJ did not apply the correct legal standards in considering Dr. Malizzo's opinion, and the reason she gave for discounting the opinion is not supported by substantial evidence. The Court does not decide any other issue raised by Ms. Chavez on appeal, as these matters are mooted by the proceedings conducted or the disposition reached on remand.

**IT IS THEREFORE ORDERED** that Ms. Chavez's *Motion to Reverse or Remand Administrative Agency Decision*, (Doc. 18), be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE